1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SABA NORTH AMERICA, LLC, et al., | CASE NO. C09-0899JLR |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| GARY BOSSARDET, | |
| Defendant and Counterclaimant, | |
| v. | |
| SABA NORTH AMERICA, LLC, et al., and DUX AREA, INC., | |
| Counterdefendants and Third-Party Defendant. | |

ORDER- 1

# I.   INTRODUCTION

This matter comes before the court on Plaintiffs SABA North America, LLC and SABA DINXPERLO BV's (collectively "SABA") motion for summary judgment (Dkt. # 22).  Having considered the papers filed in support of and in opposition to the motion, and noting that Defendant Gary Bossardet did not request oral argument, the court finds this matter appropriate for disposition without argument.  For the reasons stated below, the court GRANTS the motion and grants judgment to SABA on its claim for declaratory judgment that it does not have a contractual obligation to arbitrate any dispute with Mr. Bossardet based on the Employment Agreement entered into between Mr. Bossardet and Third-Party Defendant DUX Area, Inc. ("DUX").

# II.   FACTUAL BACKGROUND

On May 31, 2007, Mr. Bossardet entered into an employment agreement with DUX.  (Declaration of Gary Bossardet ("Bossardet Decl."), Ex. A ("Employment Agreement").)  Pursuant to the Employment Agreement, Mr. Bossardet was given the position of Group Sales Director/Adhesives Division and a $100,000 salary.  (Ex. A to Employment Agreement.)  In exchange for the position and salary, Mr. Bossardet agreed to certain other conditions of employment, including an agreement to use confidential information only for the benefit of DUX and an agreement to assign to DUX all inventions and patents undertaken by Mr. Bossardet while in the employ of DUX. (Employment Agreement ¶¶ 5, 6.0-6.4.)  These two obligations continue beyond the termination of the Employment Agreement.  Mr. Bossardet's confidentiality agreement specifically provides that Mr. Bossardet's "obligations under this Section 5 are indefinite

1    in term and shall survive the termination of this Agreement." (*Id.* at ¶ 5.)  His agreement

2    regarding inventions and patents continues for one year after the termination of the

3    Employment Agreement.  (*Id.* at ¶ 6.)

4    **A.    DUX/SABA Partnership**

5        Mr. Bossardet believes that he was hired to work for DUX because of his expertise

6    in water-based adhesives, an expertise needed for the planned DUX/SABA partnership.

7    (Bossardet Decl. ¶¶ 4, 5.)  The partnership would utilize DUX's spray gun and SABA's

8    water-based adhesive to offer consumers a bundled foam bonding product.  (*Id.* ¶ 5.)  In

9    fact, Mr. Bossardet contends that his first project as a new employee of DUX was to test

10   the DUX spray gun with the SABA water-based adhesive product.  (*Id.* ¶ 10.)  Mr.

11   Bossardet's testing resulted in a DUX/SABA foam bonding product.  (*Id.* ¶ 9.)  Shortly

12   after Mr. Bossardet signed his Employment Agreement he was given responsibility for

13   selling the "DUX/SABA foam bonding system" to the United States market.  (*Id.* ¶ 13.)

14   He and his sales team held themselves out as employees of the DUX/SABA partnership.

15   (*Id.* ¶ 15.)  Beginning in 2008, Mr. Bossardet learned that DUX and SABA were

16   negotiating a sale of DUX's adhesive assets to SABA.  (*Id.* ¶ 19.)  Between February

17   2008 and April 30, 2008, James Turner, DUX's Vice President of Business Development,

18   assured Mr. Bossardet that he and his sales team were "to be part of the asset purchase

19   with SABA."  (*Id.* ¶ 22.)

20       On April 30, 2008, the DUX/SABA partnership was dissolved by the asset

21   purchase agreement between DUX and SABA.  (*Id.* ¶ 27.)  In a May 1, 2008, letter to its

22   clients, DUX wrote "[a]s you know, about a year ago Dux and SABA formed a

1   partnership to offer foam bonding solutions to the North American Market . . . .  Today

2   we finalized an agreement with SABA to sell Dux's interest in the adhesive business to

3   SABA."  (Bossardet Decl. Ex. B (DUX letter to clients).)  Mr. Turner also told Mr.

4   Bossardet in late-April 2008 that "everything will be switched over; we are just changing

5   the signs."  (Bossardet Decl. ¶ 29.)  Mr. Turner also transferred to SABA as Mr.

6   Bossardet's superior and thus Mr. Bossardet's day-to-day duties and functions essentially

7   continued without interruption or change.  (*Id.* ¶ 31.)  Mr. Bossardet's last paycheck from

8   DUX was sent by SABA.  The paycheck included an amount to be paid out for accrued

9   vacation from DUX.  (*Id.* Ex. D (May 1, 2008, email from Mr. Turner explaining final

10  paycheck status).)

11  **B.    Mr. Bossardet's Employment with SABA**

12        On April 30, 2008, Mr. Turner asked Mr. Bossardet to sign an acceptance of

13  employment with SABA as of May 1, 2008.  (*Id.* ¶ 30; Ex. C.)  The acceptance form

14  provides that Mr. Bossardet's employment with DUX was "being transferred" to SABA

15  as he had discussed with Mr. Turner on April 24, 2008.  (*Id.*)  The form also states that

16  Mr. Bossardet would soon receive an employment agreement from SABA that would be

17  similar in scope to the one he had signed with DUX.  (*Id.*)  Mr. Bossardet signed the

18  form[1] and "went back to work."  (*Id.*)  Mr. Bossardet never received a new employment

19  agreement from SABA before Mr. Turner terminated him on May 23, 2008 – just 23 days

20

21        [1] The parties do not provide the court with a signed version of the acceptance form but
22  Mr. Bossardet declared in the declaration he filed in this case that he indeed signed the form.
    (Bossardet Decl. ¶ 30.)

ORDER- 4

1    after beginning his employment with SABA.  (*Id.* ¶¶ 39, 41.)  In his notice of termination,

2    Mr. Turner stated that Mr. Bossardet's salary was too high, he had interpersonal conflicts

3    with other employees, and he had made clear to Mr. Turner that he would not sign a

4    covenant against competition as part of his employment agreement with SABA.  (*Id.* Ex.

5    D (May 28, 2008, termination letter).)  Finally, Mr. Turner advised Mr. Bossardet of his

6    continuing obligations pursuant to paragraphs five and six of the "employment agreement

7    [Mr. Bossardet] signed with DUX . . ." and stapled a copy of the Employment Agreement

8    to the letter.  (*Id.*)

9         Upon notice of his termination, Mr. Bossardet accused Mr. Turner of age

10   discrimination and claims to have filed a formal application with the Equal Employment

11   Opportunity Commission ("EEOC") for age and disability discrimination.  (*Id.* ¶ 46

12   (citing Ex. D which appears to be a sworn statement regarding his termination; there is no

13   evidence in the record suggesting the statement was sent to the EEOC or that the

14   statement was completed at its direction).)  Mr. Bossardet attempted to mediate and

15   arbitrate the dispute with SABA pursuant to the mediation and arbitration clauses

16   contained in the Employment Agreement.  However, SABA refused to participate in

17   either dispute resolution stating that it had no contractual obligation with Mr. Bossardet

18   under the Employment Agreement.  (*Id.* ¶¶ 48, 49.)

19        Mr. Bossardet also contacted DUX regarding this issue and now argues that a

20   senior executive from *DUX,* Jim Rice, "acknowledged that my Employment Agreement

21   'went with the glue team last May, when DUX sold out its position to SABA . . . .'"  (*Id.*

22   ¶ 51 (citing Ex. H (email from Mr. Rice to Mr. Bossardet's lawyer)).)  The email,

ORDER- 5

1  wherein Mr. Rice allegedly acknowledges the transfer of Mr. Bossardet's Employment

2  Agreement provides:

> Please be advised that Gary B[ossardet] went with the entire Glue team last
> May, when Dux sold out its position to SABA, and we have NO
> FURTHER DEALINGS with Gary [Bossardet].   We are NOT his
> employer, we are not his guardian, we have NO EXISTING contract with
> him and we are NOT interested in any arbitration he may want to have with
> anyone.

6  (*Id.* Ex. H.)  There is no statement in this email that "acknowledges" that Mr. Bossardet's

7  Employment Agreement transferred to SABA when he transferred.

8        Finally, Mr. Bossardet contends that because Mr. Turner referenced Mr.

9  Bossardet's Employment Agreement with DUX in his termination letter, Mr. Bossardet

10  "was obligated to advise prospective employers of the non-compete" contained therein.

11  (*Id.* ¶ 52.)

12  **C.    Procedural Background**

13        Mr. Bossardet initiated an arbitration action against SABA on March 3, 2009, with

14  the American Arbitration Association ("AAA") pursuant to the arbitration clause in his

15  Employment Agreement.  (Compl. (Dkt. #1) ¶ 15.)  SABA attempted to halt the process

16  because it claimed to not have an arbitration agreement with Mr. Bossardet.  The AAA

17  refused to stay the arbitration and SABA thereafter brought the instant complaint for

18  declaratory judgment seeking a declaration that it has no obligation to arbitrate this

19  dispute with Mr. Bossardet.  (*Id.* ¶ 17.)  Mr. Bossardet filed a counterclaim against SABA

20  and a Third-Party Complaint against DUX for breach of contract or, in the alternative, a

21  declaratory judgment.  As to SABA, Mr. Bossardet avers that it failed to follow the

ORDER- 6

1  termination provisions in his Employment Agreement and seeks a declaration that SABA

2  is "bound to all the terms and conditions" of his Employment Agreement.  (Answer and

3  Countercomplaint (Dkt. # ) ¶¶ 29-36.)  As to DUX, Mr. Bossardet alleges that it breached

4  the Employment Agreement by entering into an asset purchase agreement with SABA.

5  (*Id.* ¶¶ 57-60.)  Mr. Bossardet also seeks a declaration that DUX interfered with his rights

6  under the Employment Agreement.  (*Id.* ¶¶ 61-62.)  DUX has not moved for summary

7  judgment on the claims against it.

### III.   ANAYLSIS

9      Mr. Bossardet claims that summary judgment is not warranted because (1) the

10  DUX/SABA partnership created joint and several liability on the partners under the

11  Employment Agreement; (2) the asset purchase agreement is ambiguous regarding the

12  status of Mr. Bossardet's Employment Agreement or Mr. Bossardet's Employment

13  Agreement was assumed; and (3) SABA waived or is estopped from asserting its claim of

14  nonenforceability.

### A.   Summary Judgment Standard

16      Summary judgment is appropriate if "the pleadings, the discovery and disclosure

17  materials on file, and any affidavits," when viewed in the light most favorable to the non-

18  moving party, "show that there is no genuine issue as to any material fact and that the

19  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *Celotex*

20  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d

21  652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is

22  no genuine issue of material fact and that he or she is entitled to prevail as a matter of

1   law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, then the non-

2   moving party "must make a showing sufficient to establish a genuine dispute of material

3   fact regarding the existence of the essential elements of his case that he must prove at

4   trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.  The non-

5   moving party "must present affirmative evidence to make this showing."  *Id*.

6   Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of

7   material fact exist are insufficient," and a mere scintilla of evidence supporting a party's

8   position is also inadequate.  *Id*.

9   **B.      The DUX/SABA Partnership**

10          Mr. Bossardet spends a substantial portion of his responsive brief arguing that

11   DUX and SABA formed a partnership.  For purposes of this motion, the court views the

12   evidence in the light most favorable to Mr. Bossardet and finds there is sufficient

13   information to create a genuine issue of material fact as to whether DUX and SABA had

14   formed a partnership.  Even assuming this fact were true, however, the unrebutted

15   evidence is that the partnership dissolved when the assets were sold to SABA, which is

16   the same time that Mr. Bossardet's employment with DUX was terminated and that

17   SABA offered him employment and a new employment agreement.  Mr. Bossardet does

18   not address the effect of the termination of the partnership in response to the motion for

19   summary judgment.  Mr. Bossardet therefore fails to meet his burden of showing there is

20   a genuine issue of material fact for trial on the issue of whether his Employment

21   Agreement with DUX evolved into an employment agreement between him and an

22   alleged DUX/SABA partnership, and then survived the termination of the partnership and

ORDER- 8

1   continued on as an agreement between himself and SABA.  The latter two allegations

2   have no support in the record.  Accordingly, the court does not find that an alleged

3   DUX/SABA partnership created liability for SABA after it acquired the DUX assets and

4   terminated the DUX/SABA partnership.

5   **C.    SABA's Asset Purchase**

6          Next, Mr. Bossardet argues that the asset purchase agreement is ambiguous as to

7   whether SABA was assuming Mr. Bossardet's Employment Agreement which creates a

8   genuine issue of material fact for trial.  Mr. Bossardet relies on the alleged ambiguity

9   found in section 1.5 of the Asset Purchase Agreement.  (Turner Decl. Ex. A ("Asset

10  Purchase Agreement").)  Section 1.5 provides that the "purchased assets" include "[a]ll

11  records and lists that pertain to any one or more of the following in so far as they relate

12  exclusively to the Business: Seller's foam binding customers, advertising, promotional

13  material, sales, services, delivery, internal organization, employees, and/or operations."

14  (*Id.* at § 1.5.)  Mr. Bossardet reads "records and lists that pertain to . . . employees" as

15  including any agreements DUX may have had with the employee.  The court cannot find

16  support in the language for the legal notion that when a company purchases the records of

17  an employee it also becomes a signatory to any contract contained therein.  Indeed, the

18  rule in Washington is that a company purchasing assets of another company does not

19  become liable for the debts and liability of the selling corporation unless, as relevant here,

20  the buyer expressly or impliedly assumes those liabilities.  *Cambridge Townhomes, LLC*

21  *v. Pacific Star Roofing, Inc.*, 209 P. 3d 863, 867 (Wash. 2009).  Accordingly, the court

22

1   does not find that the Asset Purchase Agreement included an agreement to assume the

2   liabilities contained in Mr. Bossardet's Employment Agreement with DUX.

3           While the Asset Purchase Agreement does name Mr. Bossardet and discuss his

4   employment with SABA, it does not provide that SABA has assumed his Employment

5   Agreement with DUX.  Rather, it states that SABA will *offer* employment to Mr.

6   Bossardet "on terms and conditions and for compensation and benefits that will be

7   substantially similar or better than the terms and conditions" given to him by DUX.

8   (Asset Purchase Agreement §5.1.)  This is logically inconsistent with the notion that, as

9   part of the asset purchase, SABA acquired Mr. Bossardet's Employment Agreement.

10          Even assuming this were true and one could make an argument that it is possible

11  the asset purchase included employment agreements, such a finding would be

12  contradictory to both SABA's *and* Mr. Bossardet's understanding of the assumption of

13  the Employment Agreement.  On April 30, 2008, the same day that SABA entered into an

14  asset purchase agreement with DUX (Declaration of James Turner ¶ 3; Ex. A) – and the

15  same day that Mr. Bossardet received a letter from DUX stating that April 30, 2008 was

16  his last day of employment with DUX and noting that DUX understood he had accepted

17  employment with SABA (Affidavit of James Rice Ex. A) – SABA informed Mr.

18  Bossardet that his employment had been transferred to SABA and that they would be

19  sending him a new employment agreement.  (Bossardet Decl. Ex. C.)  On that same day,

20  Mr. Bossardet signed an acknowledgment that he would be receiving a new employment

21  agreement from SABA.  (*Id.*)  The intention by both parties to sign new employment

22

1   agreements cuts against Mr. Bossardet's position that his Employment Agreement

2   transferred to SABA under the Asset Purchase Agreement.

3           Accordingly, viewing the facts in the light most favorable to Mr. Bossardet, the

4   court concludes there is no legal basis for which it could find that SABA purchased Mr.

5   Bossardet's Employment Agreement as part of the asset purchase of DUX.

6   **D.    SABA's Alleged Waiver**

7           Lastly, Mr. Bossardet argues that when Mr. Turner terminated him he attached a

8   copy of Mr. Bossardet's Employment Agreement with DUX and advised him of his

9   continuing obligations pursuant to paragraphs five and six of the "employment agreement

10  [Mr. Bossardet] signed with DUX . . . ."  (Bossardet Decl. Ex. E.)  Mr. Bossardet

11  contends that "[b]y giving Bossardet formal notice to his 'continuing obligations' under

12  the Employment Agreement, and attaching said agreement to the Termination Letter,

13  SABA made an irrevocable choice prior to initiation of the instant case that waives and

14  estoppes them from seeking redress and relief from its own affirmations of enforceability

15  against Bossardet under the same contract."  (Resp. at 13.)

16          As stated above, in his Employment Agreement with DUX, Mr. Bossardet agreed

17  to certain conditions of employment, including an agreement to use confidential

18  information only for the benefit of DUX and an agreement to assign to DUX all

19  inventions and patents undertaken by Mr. Bossardet while in the employ of DUX.

20  (Employment Agreement ¶¶ 5, 6.0-6.4.)  These two obligations continue beyond the

21

22

ORDER- 11

1 termination of the Employment Agreement.[2]  As the entity that purchased the assets of

2 the DUX division where Mr. Bossardet worked, SABA became essentially a third-party

3 beneficiary of the promises Mr. Bossardet made to DUX.  Because the promises

4 contained obligations that exist beyond the expiration of the Employment Agreement, it

5 was appropriate for SABA to remind Mr. Bossardet of these obligations.  Mr. Turner did

6 not waive SABA's right to claim that the Employment Agreement is not enforceable

7 against it.

## IV.    CONCLUSION

9       The court GRANTS SABA's motion for summary judgment (Dkt. # 22) on its

10 declaratory judgment claim against Mr. Bossardet and on Mr. Bossardet's counterclaims

11 against SABA.  The court declares that SABA does not have a contractual obligation to

12 arbitrate any dispute with Mr. Bossardet based on the Employment Agreement entered

13 into between Mr. Bossardet and DUX.  The court was not asked to rule on Mr.

14 Bossardet's claims against DUX and nothing in this order should be construed as a

15 dismissal of those claims.

16

17

18

19

---

20    [2] Mr. Bossardet's confidentiality agreement provides that Mr. Bossardet's "obligations
21 under this Section 5 are indefinite in term and shall survive the termination of this Agreement."
   (Employment Agreement ¶ 5.)  His agreement regarding inventions and patents continues for one
22 year after the termination of the Employment Agreement.  (*Id.* ¶ 6.)

ORDER- 12

1    Dated this 18th day of May, 2010.

2

3

4    _____

5    JAMES L. ROBART
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 13